IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

BOBBY BARNES, CHARLES E. BLANKS,                                              PLAINTIFFS
VERNELL BURKS, SHIRLEY CAMPBELL SKINNER,
ESTATE OF EDWIN EUGENE CAMPBELL,
JAMES LAVON LUCAS, THEOPLIS NELSON,
WILLIAM PITTMAN, DONALD QUITMAN POWELL SR.,
ANDREW RODGERS, MYRTIS OPAL ROLAND,
ESTATE OF DAN ROLAND, LEE ROY SANDERS,
GUY MARCUS SHIFLETT, LARRY DONELL SHOWERS,
L.C. SMITH JR., JOHNNY W. THOMAS,
ROBERT WEEKS JR., ERNEST WILEY, and
PAM YARBROUGH-HAMPTON

V.                                              CIVIL ACTION NO. 4:16-CV-72-SA-JMV

JOHN M. O'QUINN & ASSOCIATES, PLLC,
JOHN M. O'QUINN & ASSOCIATES, LLP,
JOHN M. O'QUINN, P.C.,
JOHN M. O'QUINN LAW FIRM, PLLC,
T. GERALD TREECE, RICHARD N. LAMINACK,
JOE GIBSON, DANZIGER & DE LLANO, LLP, and
ABEL MANJI                                                                    DEFENDANTS

MEMORANDUM OPINION

*I. Introduction*

Now before the Court is a Motion to Compel Arbitration [28] brought by the O'Quinn Defendants.[1] The O'Quinn Defendants request that this Court compel arbitration of all of the Barnes Plaintiffs'[2] claims against them, and dismiss this case. The Barnes Plaintiffs filed a Response [50], and the O'Quinn Defendants filed a Reply [61], making this issue ripe for

---

[1] John M. O'Quinn & Associates, PLLC, John M. O'Quinn & Associates, LLP, John M. O'Quinn, P.C., John M. O'Quinn Law Firm, PLLC., T. Gerald Treece (Independent Executor of the Estate of John M. O'Quinn, deceased).
[2] Bobby Barnes, Charles E. Blanks, Vernell Burks, Shirley Campbell Skinner, Estate Of Edwin Eugene Campbell, James Lavon Lucas, Theoplis Nelson, William Pittman, Donald Quitman Powell Sr., Andrew Rodgers, Myrtis Opal Roland, Estate Of Dan Roland, Lee Roy Sanders, Guy Marcus Shiflett, Larry Donell Showers, L.C. Smith Jr., Johnny W. Thomas, Robert Weeks Jr., Ernest Wiley, and Pam Yarbrough-Hampton. Due to the number of pending similar cases the Court will refer to the Plaintiffs in this case as the Barnes Plaintiffs.

review.[3] Defendant Abel Manji, an employee of the O'Quinn Defendants at the time of the events giving rise to this lawsuit filed a Motion to Retain the Barnes Plaintiffs' claims against him with the Barnes Plaintiffs' claims against the O'Quinn Defendants [55]. This motion is unopposed by the Barnes Plaintiffs.

The Court considered the pleadings, the record, and the relevant arguments and authorities and for the reasons fully explained below finds the O'Quinn Defendants' Motion to Compel Arbitration well taken. The Court compels arbitration of the Barnes Plaintiffs' claims against the O'Quinn Defendants, and stays all proceedings in this case as to the O'Quinn Defendants pending arbitration pursuant to 9 U.S.C. § 3.[4]

The Court also finds Defendant Manji's Motion to retain the claims against him with those of the O'Quinn Defendants well taken and it is granted. The Court compels arbitration of the Barnes Plaintiffs' claims against Manji along with their claims against the O'Quinn Defendants and stays all proceedings in this case as to Manji pending arbitration pursuant to 9 U.S.C. § 3.

*II. Factual and Procedural Background*

The Barnes Plaintiffs originally filed their Complaint [2] in the Circuit Court of Bolivar County, Mississippi. The O'Quinn Defendants removed the case to this Court premising jurisdiction on diversity of citizenship. The Barnes Plaintiffs are all citizens of Alabama and Mississippi, and the O'Quinn Defendants are all citizens of Texas.[5]

---

[3] The O'Quinn Defendants also filed a Motion for Leave to file supplemental evidence [62]. The Barnes Plainitiffs did not oppose the motion. The Motion is therefore granted, and the Court has considered the supplemental evidence submitted by the O'Quinn Defendants.
[4] The Court's grant of the O'Quinn Defendants' Motion to Compel Arbitration [28] renders the O'Quinn Defendants' request for alternative relief, Motion for More Definite Statement / Motion to Dismiss [30], moot.
[5] It appears from the Notice of Removal [1] that all of the requirements of 28 U.S.C. §1332 are met.

According to the Barnes Plaintiffs, they were solicited for medical screenings to determine whether they had silicosis and silica-related diseases. Once diagnosed with a silica-related disease, the Barnes Plaintiffs allege they were next solicited to enter into a contract with a law firm to pursue and litigate their silica-related claims. The Barnes Plaintiffs entered into contingency fee contracts with an O'Quinn firm, and signed powers of attorney forms to enable the O'Quinn firm to represent them.

The O'Quinn firms filed a number of lawsuits against manufacturers and distributors of silica and silica products in an effort to collect damages and compensation for their clients, including the Barnes Plaintiffs, with silica-related diseases. The Barnes Plaintiffs allege that the Defendants mishandled their claims in numerous ways. Specifically the Barnes Plaintiffs allege that the Defendants committed, *inter alia*, legal malpractice by mishandling the Barnes Plaintiffs cases in various ways, gross negligence, breach of fiduciary duty, breach of contract, fraud, negligent misrepresentation, and negligent supervision. Some of the Barnes Plaintiffs' claims relate to the way their claims were handled such as improper billing for medical screenings and referrals. Other claims brought by the Barnes Plaintiffs relate to the way the Defendants handled global settlements reached with some of the silica manufacturers and distributors such as failing to distribute settlement funds in a timely manner, and wrongfully retaining settlement funds for firm use. This includes allegations that the Defendants improperly billed excessive and unrelated expenses to a "Silica General Expenses" account that was ultimately funded by the Barnes Plaintiffs' settlement funds. The Barnes Plaintiffs also allege numerous errors related to the way the Defendants processed the settlements including, failing to ensure that settlements were paid in accordance with the severity of medical conditions, intimidating and coercing plaintiffs into

accepting settlements, allowing wrongful dismissal of claims against certain manufacturers and distributors, and failing to process and finalize settlement agreements.

Based on these factual allegations, the Barnes Plaintiffs filed this suit alleging claims of legal malpractice, negligence, gross negligence, breach of fiduciary duty, breach of contract, fraud, constructive fraud, negligent misrepresentation, and negligent supervision. The O'Quinn Defendants now request that this Court compel arbitration of these claims based on certain provisions of the power of attorney and contingent fee contracts entered into by the Barnes Plaintiffs. The Barnes Plaintiffs oppose the enforcement of the arbitration clauses and argue that the arbitration provisions in the contracts are unenforceable because the American Arbitration Association indicated that it would not administer any claims between the O'Quinn firms and its former clients. The Barnes Plaintiffs also argue that the arbitration provisions are unenforceable because they are unconscionable based on expense, public policy, and because enforcement of the provisions constitutes an involuntary waiver of the Barnes Plaintiffs' rights to a jury trial.

The following bold heading and selected provisions appear in the Barnes Plaintiffs' contracts:

**THIS CONTRACT IS SUBJECT TO ARBITRATION
UNDER THE FEDERAL ARBITRATION ACT AND
THE TEXAS GENERAL ARBITRATION STATUTE**

. . .

**IX. TEXAS LAW TO APPLY**

9. This Agreement shall be construed under and in accordance with the laws of the State of Texas, and the rights, duties and obligations of Client and of Attorneys regarding Attorneys' representation of Client and regarding anything covered by this Agreement shall be governed by the laws of the State of Texas.

**X. ARBITRATION**

> 10. Any and all disputes, controversies, claims or demands arising out of or relating to (1) this Agreement or (2) any provision hereof or (3) the providing of services by Attorneys to Client or (4) the relationship between Attorneys and Client, whether in contract, tort or otherwise, at law or in equity, for damages or any other relief, shall be resolved by binding arbitration pursuant to the Federal Arbitration Act in accordance with the Commercial Arbitration Rules then in effect with the American Arbitration Association. Client shall not file a class action against Attorneys or seek to assert any claim or demands against Attorneys by or through a class action, either as the named plaintiff or as a member of the class, but rather shall submit his/her claims or demands to binding arbitration pursuant to the provisions of this Paragraph X. Any such arbitration proceeding shall be conducted in Harris County, Texas. This arbitration provision shall be enforceable in either federal or state court in Harris County, Texas, pursuant to the substantive federal laws established by the Federal Arbitration Act. Any party to any award rendered in such arbitration proceeding may seek a judgment upon the award and that judgment may be entered by any federal or state court in Harris County, Texas, having jurisdiction.

### III. Motion to Compel Arbitration

The Court must first determine whether the Barnes Plaintiffs' contracts involve interstate commerce for purposes of the Federal Arbitration Act, and thus fall within the purview of the Act. If so, the Court employs a two-step inquiry to determine whether the parties should be compelled to arbitrate under the FAA. First, the Court must determine whether the parties agreed to arbitrate the dispute in question, and second, the Court must determine whether any "legal constraints external to the parties' agreement" foreclose the arbitration of their claims. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996)

The Federal Arbitration Act provides in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid,

> irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2.

*A. Threshold Issue: Transaction Involving Commerce*

As a threshold matter, the Court must determine whether the Barnes Plaintiffs' contracts evidence a "transaction involving commerce." To determine whether a contract "evidenc[es] a transaction involving commerce" for the purposes of the FAA, the United States Supreme Court has held that "control over interstate commerce reaches not only the actual physical interstate shipment of goods but also [extends to] contracts relating to interstate commerce." *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273-74, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995). In the instant case, because the Contracts by their very nature and purpose are to be performed by individuals and entities in different states, the Court finds they involve interstate commerce for purposes of the FAA. *See e.g., Mississippi Fleet Card, L.L.C. v. Bilstat, Inc.*, 175 F. Supp. 2d 894, 898 (S.D. Miss. 2001) (finding that as the parties' agreement and attendant arbitration clauses were entered into and were to be performed by citizens of different states, the agreement involved interstate commerce as that term is defined by FAA precedent). *See also Allied-Bruce*, 513 U.S. at 273-74, 115 S. Ct. 834 (indicating that the term "involving commerce" should be construed liberally as meaning "affecting commerce."); *Arce v. Cotton Club of Greenville, Inc.*, 883 F. Supp. 117, 119 (N.D. Miss. 1995) (stating "Section 2's requirements are met where contractual activity facilitates or affects commerce, even tangentially.").

*B. Discussion and Analysis: Compel to Arbitrate*

Turning to the question of whether the Parties' should be compelled to arbitrate under the FAA, courts apply a two-step analysis.

> The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. When deciding whether the parties agreed to arbitrate the dispute in question, courts generally . . . should apply ordinary state-law principles that govern the formation of contracts. In applying state law, however, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration. The second step is to determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.

*Webb*, 89 F.3d at 257-58 (alterations in original) (internal citations omitted).

*i. Step One: Agreement, Validity and Scope*

The first step, determining whether the Parties' agreed to arbitrate the dispute in question, involves two considerations: validity, and scope. As to validity, there are no allegations in the Complaint, and the Barnes Plaintiffs have not otherwise demonstrated, that either their contracts, or specifically the arbitration provisions, are invalid under state law. After conducting its own review, the Court finds no basis for invalidity. Applying "ordinary state-law principles that govern the formation of contracts," the Court finds the subject contracts and arbitration provisions are valid. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *May v. Higbee Co.*, 372 F.3d 757, 764 (5th Cir. 2004).

As to the second consideration, scope, the express terms of the arbitration provisions cover "any and all disputes, controversies, claims or demands" that arise out of or relate to the Contracts entered between the Barnes Plaintiffs and the O'Quinn Defendants; that arise or relate to the legal services provided by the attorneys of the O'Quinn Defendants to the Barnes Plaintiffs; and that arise or relate to the relationship between the attorneys of the O'Quinn Defendants and the Barnes Plaintiffs.

7

The United States Court of Appeals for the Fifth Circuit has held that in cases in which an arbitration provision purports to cover all disputes "related to" or "connected with" the contract in which it is contained, "the provision is not limited to claims that literally 'arise under the contract,' but rather embraces all disputes between the parties having a *significant relationship* to the contract regardless of the label attached to the dispute." *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393 (5th Cir. 2002) (quoting *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)) (emphasis added).

The Court finds that all of the Barnes Plaintiffs' alleged breach of contract and fiduciary duties claims, negligence-based claims, and fraud-based claims have a significant relationship to either the contracts they entered with the O'Quinn Defendants or the legal relationship that arose between themselves and the attorneys of those firms as a result of those contracts.

The Court also finds that because all of the Barnes Plaintiffs' claims arise out of or relate to the Contracts they entered with the O'Quinn Defendants or the legal relationship established thereunder, all of the state law claims they allege in their Complaint are within the scope of the subject arbitration provisions. *See e.g. Pennzoil*, 139 F.3d at 1067 ("We resolve doubts concerning the scope of coverage of an arbitration clause in favor of arbitration. Arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.") (alterations in original) (citations omitted).

The Court finds that the parties agreed to arbitrate the dispute in question because there is a valid agreement to arbitrate between the parties, and the dispute in question falls within the scope of that arbitration agreement. *Webb*, 89 F.3d at 257-58.

*ii. Step Two: External Legal Constraints*

The Court now turns to the second step in the compel-to-arbitrate analysis, whether any "legal constraints external to the parties' agreement" foreclose the arbitration of their claims. *Id*. The Barnes Plaintiffs advance four arguments relevant to this analysis.

First, the Barnes Plaintiffs argue that the arbitration provisions are unenforceable because the American Arbitration Association ("AAA") indicated that it would not administer any claims between the O'Quinn Defendants and its former clients. In support of their argument the Barnes Plaintiffs attached several letters from the AAA to their response in which the AAA indicates that it would not administer claims for arbitration between former clients and the O'Quinn Defendants on the grounds that the firms had not complied with policy requirements for consumer claims. The Barnes Plaintiffs argue that because there is no forum where they can arbitrate their claims, the arbitration provisions are unenforceable. *See e.g. Ranzy v. Tijerina*, 393 F. App'x 174, 175 (5th Cir. 2010) (affirming the denial of a motion to compel arbitration on the grounds that the arbitrator designated in the arbitration agreement had "ceased to handle the type of consumer claims" alleged by the plaintiff).

In response, the O'Quinn Defendants presented evidence showing that the AAA has not refused to administer all claims for arbitration between the firms and its former clients, and expressly acknowledged that such claims would be administered by the AAA if accompanied by a court order. In a letter attached to the O'Quinn Defendants' reply, the AAA indicates that it would comply with all court orders directing arbitration of claims made by individuals against the O'Quinn Defendants (or vice versa), and that "[t]o the extent a court order accompanies a demand for arbitration, the AAA will initiate the arbitration in a manner consistent with the order." The Court finds that the evidence in the record demonstrates that the AAA has not

9

refused to administer all claims between the O'Quinn Defendants and its former clients, and that the Barnes Plaintiffs failed to show that there is no forum available where they could arbitrate their claims. Accordingly, the Court finds the Barnes Plaintiffs failed to show that the arbitration provisions are unenforceable based on a lack of an available forum.

Second, the Barnes Plaintiffs argue that the arbitration provisions are unconscionable, and thus unenforceable, because arbitration is too expensive. Texas courts have recognized that an arbitration agreement may be substantively unconscionable in cases in which the existence of large arbitration costs could preclude the ability of a litigant to vindicate his or her rights. *See e.g. In re FirstMerit Bank, N.A.*, 52 S.W. 3d 749, 757 (Tex. 2001) (citing *Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 82, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000)). The party seeking to invalidate an arbitration agreement on the grounds that it would be prohibitively expensive, "bears the burden of showing the likelihood of incurring such costs." *Randolph*, 531 U.S. at 92, 121 S. Ct. 513.

In this case, the arbitration provisions do provide that arbitration would proceed in accordance with the Commercial Arbitration Rules of the AAA, but the provisions are silent with respect to the manner in which arbitration costs would be assessed. Silence on the subject of costs "is plainly *insufficient* to render [the arbitration provisions] unenforceable." *Id.* at 91, 121 S. Ct. 513 (emphasis added). The Barnes Plaintiffs' argument that they could face exorbitant fees under the governing AAA rules, without support or evidence, is insufficient to invalidate the arbitration provisions. *See id.*, 121 S. Ct. 513 (explaining that the risk that a plaintiff may be "saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.").

Because the Barnes Plaintiffs' argument, without support or evidence, that they would incur exorbitant fees if required to arbitrate their claims is purely speculative, the Court finds that the Barnes Plaintiffs failed to show that the subject arbitration provisions are unconscionable and unenforceable because of cost. *See e.g. In re FirstMerit Bank*, 52 S.W. 3d at 757 ("Because the record contains no specific evidence that the [plaintiffs] will actually be charged excessive arbitration fees, we conclude that there is legally insufficient evidence that the plaintiffs would be denied access to arbitration based on excessive costs."); *TMI, Inc. v. Brooks*, 225 S.W. 3d 783 n.12 (finding the plaintiffs had failed to prove an arbitration provision was unconscionable as cost prohibitive in a case in which: (1) they had not sought to initiate arbitration; (2) the arbitration provision at issue did not limit their remedies or provide for any fee splitting arrangement; (3) they did not present any specific evidence regarding their inability to afford arbitration other than conclusory statements that they could not afford the estimated AAA costs and fees; and (4) they failed to otherwise show that they would "actually be charged the fees they have identified").

Third, the Barnes Plaintiffs argue that the arbitration provisions are unconscionable and unenforceable as being void against public policy because the O'Quinn Defendants failed to disclose and explain material facts regarding arbitration to them after the attorney-client relationship was established. This argument is clearly contrary to Texas law. The Texas Supreme Court has explained:

> We decline to impose, as a matter of public policy, a legal requirement that attorneys explain to prospective clients, either orally or in writing, arbitration provisions in attorney-client employment agreements. Prospective clients who enter such contracts are legally protected to the same extent as other contracting parties from, for example, fraud, misrepresentation, or deceit in the contracting process. But prospective clients who sign attorney-client employment contracts containing arbitration

11

> provisions are deemed to know and understand the contracts' content and are bound by their terms on the same basis as are other contracting parties.

*Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W. 3d 494, 504 (Tex. 2015) (internal citations omitted). *See also Chambers v. O'Quinn*, 305 S.W. 3d 141, 148 (App. Tex. 2009) (rejecting plaintiffs' claims that arbitration provisions were unenforceable based on the alleged failure of the O'Quinn firms to disclose the provision and to adequately explain the material facts relating to arbitration).

There is no public policy in Texas that legally requires attorneys to explain arbitration provisions to their clients. Therefore, the Court finds the Barnes Plaintiffs failed to demonstrate that the arbitration provisions are unconscionable or unenforceable based on the alleged failure of the O'Quinn firms to do disclose and explain material facts.

Fourth and finally, the Barnes Plaintiffs argue that the arbitration provisions are unconscionable and unenforceable because they did not know they were waiving their constitutional right to a jury trial by signing the provisions.

Again, this argument runs contrary to Texas law. Texas courts have held that "arbitration does not deny parties their right to a jury trial, as a matter of law." *Henry v. Gonzalez*, 18 S.W. 3d 684, 691 (Tex. App. 2000). Instead, an arbitration provision is considered an "agreement to resolve disputes out of court in the first instance, not an agreement to waive a particular constitutional right available within the judicial process." *Chambers*, 305 S.W. 3d at 149. *See also In re Prudential Ins. Co. of Am.*, 148 S.W. 3d 124, 131 (Tex. 2004) (explaining that parties agree to opt out of the civil justice system altogether when they agree to submit future disputes to arbitration); *Mikey's House LLC v. Bank of Am., N.A.*, 232 S.W. 3d 145, 151 (Tex. App. 2007) ("[A]rbitration constitutes an agreement by the parties to avoid the judicial process altogether,

not an agreement to limit one's rights following the invocation of the judicial process."); *Massey v. Galvan*, 822 S.W. 2d 309, 318 (Tex. App. 1992) ("It is clear that when a party agrees to have a dispute resolved through arbitration rather than judicial proceeding, that party has waived its right to a jury trial."); *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711 (5th Cir. 2002) (explaining that the "Seventh Amendment right to a trial by jury is limited by a valid arbitration provision that waives the right to resolve a dispute through litigation in a judicial forum . . . . The Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes.").

Because all of the Barnes Plaintiffs contractually agreed to have their claims resolved through arbitration and not litigation, the Court finds they failed to demonstrate that the arbitration provisions are unconscionable and unenforceable because they unknowingly or involuntarily waived their rights to a jury trial.

*C. Conclusion: Motion to Compel Arbitration*

Because the Court finds above that the Barnes Plaintiffs' contracts and arbitration provisions evidence transactions involving commerce, that valid agreements to arbitrate exists between each Barnes Plaintiff and the O'Quinn Defendants, that all of the claims alleged by the Barnes Plaintiffs are within the scope of the arbitration provisions, and that no external legal constraints foreclose arbitration, the Court grants the O'Quinn Defendants' Motion to Compel Arbitration.

*III. Defendant Manji*

Defendant Manji was an attorney for the O'Quinn Defendants at the time of the events giving rise to this lawsuit. Manji now requests that the Court order that the Barnes Plaintiffs' claims against him be retained, and adjudicated in the same forum, with the Barnes Plaintiffs' claims against the O'Quinn Defendants. The Barnes Plaintiffs do not oppose Defendant Manji's request. Now that the Court above compels arbitration of the Barnes Plaintiffs' claims against the O'Quinn Defendants, Manji argues that the Barnes Plaintiffs should also be compelled to arbitrate their claims against him under the doctrine of equitable estoppel.

Under Texas law, equitable estoppel allows non-signatories to compel arbitration in two circumstances:

> "(1) when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatories and a signatory, or (2) when the nature of the underlying claims requires the signatory to rely on the terms of the written agreement containing the arbitration clause in asserting the signatory's claims against the non-signatories."

*In re EGL Eagle Global Logistics, LP*, 89 S.W. 3d 761, 764-765 (Tex. App. 2002). Additionally, under Texas law:

> When contracting parties agree to arbitrate all disputes "under or with respect to" a contract . . ., they generally intend to include disputes about their agents' actions because "as a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Holloway v. Skinner*, 898 S.W. 2d 793, 795 (Tex. 1995). If arbitration clauses only apply to contractual signatories, then this intent can only be accomplished by having every officer and agent (and every affiliate and its officer and agents) either sign the contract or be listed as a third party beneficiary. This would not place such clauses on an equal footing with all other parts of a corporate contract.

*In re Vesta Ins. Group, Inc.*, 192 S.W. 3d 759, 762 (Tex. 2006).

In this case, the record demonstrates that Manji was an employee of the O'Quinn Defendants, and that the Barnes Plaintiffs' claims arise out of the contracts they entered with the O'Quinn Defendants, or from the attorney-client relationship that was established by the contracts. In addition, the Barnes Plaintiffs' claims arise from allegations of wrongdoing by one or more attorneys at the O'Quinn Defendants, which could include Manji. The Court finds that the grounds for applying equitable estoppel are satisfied in this case, thus Manji's motion is granted to the extent the Order compelling arbitration will be extended to include the claims alleged by the Barnes Plaintiffs against him.

*IV. Stay of Proceedings*

The O'Quinn Defendants also request dismissal of this case, or in the alternative, that the proceedings against them be stayed pending arbitration. Although the Court now compels arbitration of all of the Barnes Plaintiffs' claims against the O'Quinn Defendants and Manji, this does not end the entire litigation of this case. The Barnes Plaintiffs' claims against Defendants Laminack and Danziger remain pending. Because these claims remain pending, dismissal is not warranted at this time. Pursuant to 9 U.S.C. § 3, all proceedings against the O'Quinn Defendants, including Treece (the independent executor of the estate of John M. O'Quinn, deceased), and against Manji must be stayed pending arbitration. *See* 9 U.S.C. § 3 (providing in relevant part that "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . , shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . .").

*V. Conclusion*

For all of the reasons fully explained above, this Court ORDERS the following:

The O'Quinn Defendants' Motion to Compel Arbitration [28] is GRANTED and the Barnes Plaintiffs are hereby ordered and compelled to arbitrate all their claims against the O'Quinn Defendants, including Treece, in accordance with the arbitration provisions of their contracts.

The Court's grant of the O'Quinn Defendants' Motion to Compel Arbitration renders their request for alternative relief, Motion for a More Definite Statement [30], MOOT.

Defendant Manji's Motion to Retain the Barnes Plaintiffs' claims against him with the Barnes Plaintiffs' claims against the O'Quinn Defendants [55] is GRANTED, and the Barnes Plaintiffs are hereby ordered and compelled to arbitrate all their claims against Manji along with their claims against the O'Quinn Defendants in accordance with the arbitration provisions of the Parties' contracts.

The O'Quinn Defendants Motion to File Supplemental Evidence [62] is GRANTED, and the Barnes Plaintiffs are hereby ordered and compelled to arbitrate their claims against the O'Quinn Defendants including Treece, and against Manji, in an arbitration conducted by the American Arbitration Association, under the AAA's Commercial Arbitration Rules, in Harris County, Texas, as required by the arbitration provisions of the Parties' contracts.

SO ORDERED on this the 31st day of March, 2017.

    /s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE